UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dale Allen Lindsey,

        Plaintiff,

v.

Kevin Moser,
Becky Olson,
Peter Puffer,
Laurel Tobey,
Gene Anderson,
Charlie Hoffman,
Sandi Schoenrock,
Colleen Fallen,
Heidi Menard,
Vicki Myer,
Jessica Ranem,
Ronda White,
Mike Zimmerman,
Ken Stewart,
Troy Basaraba,
Tracey Gebhart,
Cindy Cherro,
Steve Lydon, and
Kelli Miner,

        Defendants.

Case No. 15cv2091 (SRN/SER)

**REPORT AND RECOMMENDATION AND ORDER**

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiff Dale Allen Lindsey's ("Lindsey") Motion to Appoint Counsel [Doc. No. 11]; Defendant Kelli Miner's ("Miner") Motion to Dismiss [Doc. No. 21]; and Lindsey's Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55 ("Motion for Default Judgment") [Doc. No. 33]. This matter was referred pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons

stated below, the Court recommends granting the Motion to Dismiss and dismissing the action in its entirety without prejudice. The Court denies the Motion to Appoint Counsel as moot and similarly recommends denying the Motion for Default Judgment as moot.

## I. BACKGROUND

Lindsey, a client of the Minnesota Sex Offender Program ("MSOP"), initiated this civil rights case pursuant to 42 U.S.C. § 1983 on April 20, 2015, and filed an application to proceed *in forma pauperis* ("IFP"). (Compl., "Original Compl.") [Doc. No. 1]; (Appl. to Proceed in District Court Without Prepaying Fees or Costs, "IFP Appl.") [Doc. No. 2]. This Court ordered Lindsey to file an amended complaint, stating:

> Lindsey's Complaint alleges eleven individuals treated him unfairly at the Minnesota Security Hospital in Moose Lake, Minnesota. Nevertheless, Mr. Lindsey appears to be suing for racial discrimination. He must therefore state how each defendant treated him differently on account of his race. In Claims 1, 2, and 4, Lindsey describes actions taken by the defendants which are then followed by his conclusory statement that the actions were discriminatory. *See* Complaint at 4, 5, 7-9, ECF No. 1. This does not provide sufficient notice as to what the defendants did (or failed to do) that violated the law. If Mr. Lindsey wishes to proceed against each of the defendants named in this litigation for each of the factual scenarios in Claims 1, 2 and 4 of his complaint, he must explain why he thinks his race was part of how the incidents unfolded.
>
> In Claim 3, Lindsey states that he was involved in a fight with a white patient and he was punished but the white patient was not. Complaint at 6-7, ECF No. 1. Although in this claim Lindsey does explain why he believes the events were based on his race, Lindsey does not specify which defendant or defendants were involved. Mr. Lindsey should also specify in his amended complaint the names of the defendants who were involved in this incident. He may add additional defendants if necessary.

(Order Dated May 19, 2015) [Doc. No. 3 at 2]. Lindsey filed an amended complaint on June 11, 2015, and the Court granted his IFP Application. (Am. Compl., "First Am. Compl.") [Doc. No. 4]; (Order on Appl. to Proceed Without Prepayment of Fees) [Doc. No. 5].

Lindsey's First Amended Complaint contains four claims: In his first claim, he alleges

various defendants falsely accused him of stalking and of having a history of fixation with staff in emails and other communications. (First Am. Compl. at 2). In his second claim, he alleges various defendants unfairly punished him, stalked and harassed him, lied in reports, failed to communicate with Lindsey, violated MSOP policy, intentionally provoked Lindsey, treated white and black clients differently, and were biased against Lindsey. (*Id.* at 2–3). In his third claim, Lindsey alleges three defendants treated him differently from other clients because of his race following two altercations. (*Id.* at 4–5). In his fourth and final claim, Lindsey alleges various defendants lied in an incident report and knew of the racial discrimination taking place at MSOP, but took no action. (*Id.* at 6). Consequently, Lindsey alleges he suffered mental distress, defamation, embarrassment, job relocation and loss, harassment, abuse, fear of defendants, a racially divided environment, fear of criminal charges, and pain and suffering. *See generally* (*id.*).

Summonses were issued on June 22, 2015, and most defendants named in the First Amended Compliant were "served" by "certified mail" on July 9, 2015.[1] *See* (Summonses Returned Executed) [Doc. No. 9]. Myer was not served. An internal Court note reflects that the Clerk's Office did not receive a U.S. Marshal form for Myer, and therefore, no summons was issued to her. On November 25, 2015, Lindsey filed his Motion to Appoint Counsel and Second Amended Complaint without leave of Court, which added claims against Steve Lydon ("Lydon") and Kelli Miner ("Miner"). (Am. Compl., "Second Am. Compl.") [Doc. No. 10]; (Mot. to Appoint Counsel). In the Second Amended Complaint, Lindsey alleges that Lydon made false

---

[1] Defendant Charlie Hoffman ("Hoffman") was served with the First Amended Complaint and is listed in its case caption. *See* (First Am. Compl. at 1); (Summonses Returned Executed at 7). In the First Amended Complaint, however, Lindsey stated that he wants both Hoffman and Defendant Vicki Myer ("Myer") to be dismissed because he does not have evidence to support claims against them. *See* (First Am. Compl. at 6).

3

verbal and written polygraph reports that state Lindsey admitted to certain conduct and that Lindsey is "guilty by association" based on Lindsey's relatives. (Second Am. Compl. at 1). Lindsey claims that he has evidence of racial discrimination, defamation, and misrepresentation of his character that demonstrates "abuse of racial profiling." (*Id.*). Lindsey alleges that Miner attempted to get another employee to write incident reports that amount to discrimination toward Lindsey and his "character." (*Id.* at 2). The Clerk's Office issued summonses for Lydon and Miner. (Summonses Issued) [Doc. No. 12].

On December 18, 2015, the Court noted no defendant had entered an appearance and more than 120 days had elapsed since the initiation of the suit.[2] (Order Dated Dec. 18, 2015) [Doc. No. 13]. The Court ordered Lindsey to (1) notify defendants that they had to appear or move for an extension; (2) file an application for entry of default; or (3) advise the Court of any good cause why he could not comply with the order. (*Id.*). In response, Lindsey argued defendants had failed to timely respond and purported to seek entry of default and default judgment against defendants. (Pl.'s Resp. to Court's Order of Dec. 19, 2015, "Lindsey's Service Resp.") [Doc. No. 14 at 3–6, 8]. On January 14, 2016, Assistant Attorney General Jeffery D. Weber ("Weber"), who represents the MSOP where Lindsey is currently residing, responded to Lindsey's Service Response.[3] (Letter to Mag. J. Dated Jan. 14, 2016) [Doc. No. 16]. Weber stated that service had not been attempted for some defendants and asserted that none of the defendants for whom service was attempted were served in compliance with Federal Rule of

---

[2]   The Federal Rules of Civil Procedure were amended effective December 1, 2015, which changed the time to serve a complaint from 120 days to 90 days. *See* Fed. R. Civ. P. 4, advisory committee's notes to 2015 amendment. Because Lindsey's complaint was filed before the Rules were amended, the Court applied the 120-day requirement.

[3]   Although Weber's letter is dated January 11, 2016, it was not docketed until January 14, 2016, because Weber initially sent the letter through U.S. mail. Throughout this Report and Recommendation, the Court refers to the dates documents were filed, rather than sent, for ease of reference. The difference in these dates is not material to the Court's analysis.

Civil Procedure 4. (*Id.*). Lindsey filed a letter in response, asserting that he is entitled to rely on the U.S. Marshals Service's representation for those defendants for whom service was attempted, and, therefore, service was effective. *See generally* (Letter to Mag. J. Dated Jan. 22, 2016) [Doc. No. 17].

The summons for Miner was returned executed, demonstrating that she was served on January 8, 2016, and Weber entered a notice of appearance on her behalf on January 28, 2016. (Summons Returned Executed) [Doc. No. 18]; (Notice of Appearance) [Doc. No. 20]. Miner, through Weber, moved to dismiss the complaint against her. (Mot. to Dismiss). Lindsey filed a response and Miner filed a reply. (Pl.'s Mem. in Resp. to Mot. to Dismiss, "First Mem. in Opp'n") [Doc. No. 28]; (Miner's Reply Mem. of Law in Supp. of Mot. to Dismiss, "Reply") [Doc. No. 30]. Although not permitted by the Local Rules, Lindsey filed a response to Miner's Reply. (Pl.'s Opp'n & Mem. of Law in Resp. to Miner's Mot. to Dismiss, "Second Mem. in Opp'n") [Doc. No. 31]; *see also* Local Rule 7.1(c). Miner's Motion to Dismiss is now fully briefed and ripe for consideration.

On March 21, 2016, Linsey moved for default judgment. (Mot. for Default J.). Although the motion is not clear regarding against which defendants Lindsey seeks judgment, the Court construes the motion to be against all defendants who have not appeared. *See* (*id.*).

## II.   OPERATIVE COMPLAINT

As an initial matter, the Court notes that Lindsey has filed three complaints; this creates some confusion with respect to the operative complaint. *See* (Miner's Mem. of Law in Supp. of Mot. to Dismiss, "Mem. in Supp.") [Doc. No. 23 at 1–2]. "It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Nonetheless, because

pro se pleadings are to be construed liberally, a court may read multiple complaints together. *See Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) (stating that although the second complaint failed to state a claim, plaintiff referenced his original complaint and clearly intended the complaints to be read together). Here, Lindsey's First Amended Complaint clearly references the Original Complaint and states that it incorporates the Original Complaint. (First Am. Compl. at 1).

The Second Amended Complaint was not properly filed. Where, as here, Lindsey already amended his compliant once, he was not permitted to do so again without the consent of defendants or the Court. *See* Fed. R. Civ. P. 15(a). In filing the Second Amended Complaint, Lindsey appears to have intended to augment the Original and First Amended Complaints and have all three complaints read together. *See* (Second Am. Compl.) (stating that the Second Amended Complaint "added defendants" and making claims against Lydon and Miner only).

Arguably, the Court should only consider the Original and First Amended Complaints, as they are the only properly filed complaints before the Court. *See* Fed. R. Civ. P. 15(a); *cf. Kiir v. N.D. Pub. Health*, No. 16-1336, — F. App'x —, 2016 WL 3160984, at *1 (8th Cir. 2016) (per curiam) (unpublished) (finding that where plaintiff was granted leave to amend his compliant two times and amendments added and dropped defendants and claims, the district court should have read the original complaint and two amendments together); *Cooper*, 189 F.3d at 783–84 (reading complaints together where only two complaints were filed and the second complaint referenced earlier complaint). Nonetheless, the Court is required to construe pro se pleadings liberally, and even if the Court considers all three complaints as timely and properly filed, dismissal of this action is warranted. *See Farah v. Gonzales*, No. Civ. 05-1944 (DWF/AJB), 2006 WL 1116526, at *1 n.1 (D. Minn. Apr. 26, 2006) (Frank, J.) ("Defendants also request that

6

the Court strike the Amended Complaint that Farah filed on February 8, 2006, on the ground that Farah failed to follow Rule 15(a) of the Federal Rules of Civil Procedure. The Court declines to strike the Amended Complaint because the outcome of the case is the same regardless of whether the Amended Complaint is stricken from the record."). The Court therefore considers the impact of the Second Amended Complaint on its analysis, regardless of the procedural deficiencies.

### III. DISMISSAL OF CLAIMS

Separate from Miner's Motion to Dismiss, the Court recommends this action be dismissed without prejudice. The Court does not have subject matter over Lindsey's claims for damages for violations of federal law or his claims for violations of state law. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the claim."). In addition, to the extent Lindsey seeks injunctive or declaratory relief, he has failed to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (stating that a court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.").

#### A. Official Capacity

Defendants are employees of MSOP, which operates under the Minnesota Department of Human Services, a subdivision of the state of Minnesota.[4] *Nelson v. Minnesota*, No. Civ. 04-192 (MJD/JGL), 2005 WL 1719369, at *4 (D. Minn. July 20, 2005) (Lebedoff, C. Mag. J.), *adopted by* 2005 WL 2205826 (Sept. 8, 2005) (Davis, J.); *see generally* (Original Compl.) (identifying Defendants as MSOP employees). "Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*,

---

[4] For the purposes of this analysis, the Court uses the term "Defendants" to refer to all defendants identified as such in any of Lindsey's three complaints. *Cf.* (First Am. Compl. at 6) (stating that Hoffman and Myer should be dismissed).

7

172 F.3d 531, 535 (8th Cir. 1999). Absent an express statement that a plaintiff sues defendants in their individual capacities, the court must construe a complaint as making claims against defendants in their official capacities only. *See id.* ("Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. Absent such an express statement, the suit is construed as being against the defendants in their official capacity." (citations omitted)). Lindsey's complaints do not specify the capacity of Defendants, and thus the Court must construe his complaints as only raising claims against Defendants in their official capacities. *See* (Original Compl.); (First Am. Compl.); *see also* (Second Am. Compl.).

### B.   Subject Matter Jurisdiction

Because Lindsey is only suing Defendants in their official capacities, the Court lacks subject matter jurisdiction over Lindsey's complaints to the extent they seek damages based on violations of federal law, and to the extent they seek relief based on state law.

When state officials are sued in their official capacities, the real party in interest is the state. *Beaulieu v. Ludemon*, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *7 (D. Minn. June 18, 2008) (Mayeron, Mag. J., as adopted by Rosenbaum, C. J.) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). "Under the Eleventh Amendment, federal courts do not have subject matter jurisdiction over a claim against a state for damages that has not consented to the suit." *Id.* Section 1983 does not abrogate a state's Eleventh Amendment immunity, and Lindsey does not allege that Minnesota waived its Eleventh Amendment immunity or that Minnesota consented to the suit. *See Will*, 491 U.S. at 66. Therefore, Lindsey's claims of damages for alleged violations of federal law must be dismissed for lack of subject matter

jurisdiction. *See* (Original Compl. at 4, 5) (seeking punitive damages).

Relatedly, the Eleventh Amendment bars suits against state officials in their official capacities for violations of state law, regardless of the type of relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Thus, to the extent Lindsey's complaints can be read to allege a state law claim for defamation, the Court does not have subject matter jurisdiction to consider the claim.[5] *See* (First Am. Compl. at 1) (referring to "defamation of character"); (Second Am. Compl. at 1) (alleging, with respect to Lydon, that Lindsey has "evidence that supports racial discrimination and defamation and misrepresentation[] of [his] character" and alleging, with respect to Miner, that her actions are "a form of discrimination toward [Lindsey] and [his] character").

For the foregoing reasons, the Court recommends this action be dismissed without prejudice for lack of subject matter jurisdiction to the extent Lindsey makes claims for damages against Defendants in their official capacities for constitutional violations and to the extent Lindsey seeks any form of relief from Defendants in their official capacities based on alleged violations of state law.

### C.   Failure to State a Claim

Lindsey sought and received permission to proceed *in forma pauperis*. *See* (Order on Appl. to Proceed Without Prepayment of Fees). Under the IFP statute, this Court must dismiss a case "at any time" if it determines that the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Arguably, Lindsey's Original Complaint seeks injunctive relief or declaratory judgment. (Original Compl. at 4) (stating that a form of relief Lindsey seeks is for the Court to "impose

---

[5]   "[M]ere defamation by itself does not constitute a cause of action under [§] 1983 or [§] 1985." *Clark v. Solem*, 628 F.2d 1120, 1121 (8th Cir. 1980) (per curiam).

punishment"); (*id.* at 4–6, 8) (stating that a form of relief Lindsey seeks is a "ruling," "judgment," and "a fair decision"); (First Mem. in Opp'n at 7) ("Plaintiff is seeking injunctive relief that would afford him his constitutional rights to which he is entitled."). These remedies are prospective relief, and may be sought when state officials are sued in their official capacities. *Bennie v. Munn*, No. 14-3473, — F.3d —, 2016 WL 2731577, at *3 (8th Cir. May 11, 2016).

When a plaintiff makes official capacity claims, "[t]he entity itself—in this case, the State of Minnesota—must be the 'moving force' behind the alleged deprivation of rights." *Daywitt v. Minnesota*, Civ. No. 14-4526 (MJD/LIB), 2015 WL 4094199, at *12 (D. Minn. July 6, 2015) (Davis, J., adopting report and recommendation of Brisbois, Mag. J.) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

> To establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner.

*Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citation omitted). Lindsey's complaints do not allege that any MSOP employees took any actions pursuant to **any** policy or custom, much less an unconstitutional one. Further, he does not allege that any employees possessed final authority or used any such authority in an unconstitutional manner. Therefore, to the extent Lindsey seeks injunctive or declaratory relief for defendants' alleged constitutional violations, he has failed to state claim for which relief can be granted and the Court recommends dismissal of any such claims without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court therefore recommends that this case be dismissed without prejudice in its entirety for lack of subject matter jurisdiction over Lindsey's state law claims and federal claims to the extent he seeks damages, and because he fails to state a claim for injunctive or declaratory

relief based on any federal constitutional claim.

## IV.     MOTION TO DISMISS

Miner moves to dismiss the complaint because the First Amended Complaint does not identify her as a defendant or make factual allegations against her. (Mem. in Supp. at 3). In the alternative, Miner argues that if the Court construes the Second Amended Complaint as operative, it fails to state a claim against her, is not properly filed, and was not properly served. (*Id.* at 4–7). Because the Court determines that Lindsey fails to state a claim against Miner, it does not address Lindsey's alternative argument based on lack of service.

### A.     Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. The complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Pro se pleadings must be construed liberally, but they "may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). A court accepts the facts alleged in the complaint as true, and grants "reasonable inferences in favor of the nonmoving party." *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012). Legal conclusions "must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The factual allegations, however, "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

B.     Analysis

Miner is not named in the Original or First Amended Complaints, nor are any facts alleged against her. *See* (Original Compl.); (First Am. Compl.). Therefore, Lindsey has failed to state a claim against Miner in those complaints.

But even reading the Second Amended Complaint together with the original Complaint and First Amended Complaint, Lindsey fails to state a claim against Miner. Lindsey's claim against Minor states, in its entirety, that Miner "has tried to get [a] maintenance worker to write incident reports on to get BER of boundaries [sic] that is a form of discrimination toward me and [my] character. Their [sic] is also proof of this as well."[6] (Second Am. Compl. at 2).

As discussed, Lindsey's claims are barred against Miner because she is named only in her official capacity and the Court lacks subject matter jurisdiction over state law claims and federal claims for damages.[7] *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106; *Beaulieu*, 2008 WL 2498241, at *7. Nothing in the allegations against Miner suggest an intent to seek injunctive or declaratory relief. Regardless, Lindsey fails to state such a claim because he does not allege that Minnesota was the "moving force" behind an alleged deprivation of rights. *See Daywitt*, 2015 WL 4094199, at *12. For the foregoing reasons, the Court recommends that Miner's Motion to Dismiss be granted.

V.     LINDSEY'S REQUEST TO AMEND HIS COMPLAINT

Lindsey requests leave to file an amended complaint. *See* (First Mem. in Opp'n at 8 n.6); (*id.* at 11, 13–14); (Second Mem. in Opp'n at 3–7). Lindsey did not provide a proposed amended

---

[6]     There is no information in the Second Amended Complaint with respect to what "BER" means.

[7]     *Cf.* (Mem. in Supp. at 2 n.2) (arguing service of the Original Complaint and First Amended Complaint was "effective against Miner only in her individual capacity"); *but see* (Summons Returned Executed) [Doc. No. 18] (stating that Miner was served by certified mail); *see also* Minn. R. Civ. P. 4.03(d) (describing method of service upon the state).

complaint and did not provide any additional information with respect to how a further amendment would change the current pleadings with respect to Miner or any other defendant. Therefore, the Court cannot conclude that granting Lindsey leave to amend would be warranted at this stage. Nonetheless, in light of the above analysis and in consideration of the service issues described above, the Court recommends dismissal without prejudice.

## VI. REMAINING MOTIONS

This Court recommends dismissing this action without prejudice for the reasons articulated above. Therefore, the Court denies the Motion to Appoint Counsel as moot and recommends denying the Motion for Default Judgment as moot.

## VII. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Dale Allen Lindsey's ("Lindsey") Motion to Appoint Counsel [Doc. No. 11] is **DENIED as moot.**

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. Defendant Kelli Miner's Motion to Dismiss [Doc. No. 21] be **GRANTED**;
2. Lindsey's Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55 [Doc. No. 33] be **DENIED as moot**; and
3. This action be **DISMISSED without prejudice.**

Dated: June 21, 2016

                                            *s/Steven E. Rau*
                                            STEVEN E. RAU
                                            United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.